UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TYRONE SIMMONS,

                          Petitioner,

                                                        **OPINION AND ORDER**

          -against-
                                                        14 Civ. 3998 (VB)(JCM)

MICHAEL SHEAHAN, Superintendent of
Five Points Correctional Facility,

                          Respondent.
------------------------------------------------------------X

    Petitioner Tyrone Simmons, ("Petitioner") brings this *pro se* habeas corpus petition

pursuant to 28 U.S.C. § 2254, challenging his state court conviction following a jury trial in New

York State County Court, Westchester County. (Docket No. 1).  In his original filing, dated May

9, 2014,[1] Petitioner attached a motion to hold the petition in abeyance so he could exhaust a

claim he was litigating in state court under New York Criminal Procedure Law § 440.10.  He

also wanted the petition stayed so he could file a writ of error *coram nobis* after the resolution of

his § 440.10 action.  On September 24, 2014, Petitioner renewed his motion to hold the petition

in abeyance. (Docket No. 9).  Respondent Michael Sheahan ("Respondent") opposes the motion.

(Docket Nos. 12 and 13).  For the reasons set forth below, Petitioner's application is GRANTED.

## I.  BACKGROUND

    The Court limits the background facts to those necessary for the present application.

---

[1] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding
to the court clerk. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Walker v. Jastremski*, 430 F.3d 560 (2d Cir.
2005) (analyzing the "*Houston* prison mailbox rule").  Petitioner certified that he delivered his petition to prison
authorities for mailing on May 9, 2014.  Unless otherwise noted, the Court adopts Petitioner's certification dates for
all other filings discussed herein.

**A.  The Crime, Conviction, and Post-Conviction State Court Proceedings**

Petitioner was convicted on September 16, 2009 of three counts of sexual abuse in the first degree for his conduct on July 14, 2007.  He was sentenced on October 16, 2009 to three consecutive determinate terms of imprisonment of seven years.

On December 8, 2010, Petitioner's appellate counsel submitted his brief to the Appellate Division, raising the following four arguments to challenge Petitioner's conviction on direct appeal:  (1) one of the counts of sexual abuse was not proven; (2) Petitioner should not have been sentenced to consecutive sentences; (3) the trial court erred by failing to preclude a nurse witness; and (4) expert DNA testimony was prejudicial.

On August 10, 2011, Petitioner filed a *pro se* supplemental brief, raising one additional issue, namely, that he was denied effective assistance of counsel because he did not have an attorney when he was first arraigned.  On December 19, 2011, the Appellate Division granted Respondent's motion to strike Petitioner's *pro se* supplemental brief because it raised matters dehors the record.  The Appellate Division gave Petitioner the opportunity to refile, but Petitioner never did.

On March 13, 2012, the Appellate Division affirmed Petitioner's judgment of conviction and his sentence. *People v. Simmons*, 93 A.D.3d 739 (App. Div. 2012).

On March 19, 2012, Petitioner, through his attorney, sought leave to appeal to the New York Court of Appeals.  The Court of Appeals denied Petitioner's application on May 4, 2012. *People v. Simmons*, 19 N.Y.3d 867 (2012).

On June 26, 2013, Petitioner filed a *pro se* motion to vacate judgment, pursuant to Criminal Procedure Law § 440.10, arguing that (1) the prosecution committed a *Brady* violation by failing to disclose a cooperator agreement between Jabar Williams, an adverse witness during

Petitioner's trial, and the federal government, and (2) that the trial court improperly limited his cross examination of this witness.  On December 17, 2013, the trial court denied Petitioner's motion, finding no evidence of prosecutorial misconduct because there was no evidence of an agreement between Jabar Williams and the federal government.  The Court also found Petitioner's second argument record based and inappropriate for resolution on a § 440.10 motion.

The Appellate Division denied Petitioner leave to appeal on May 1, 2014, and the Court of Appeals denied Petitioner leave to appeal on May 10, 2014.

## B.  The Habeas Corpus Petition

Petitioner timely filed a habeas corpus petition on May 9, 2014. (Docket No. 1).  In it, Petitioner organized his grounds for relief into two categories.  The first reads: "Improper sentence.  And, bolstered witnesses[.]"  Petitioner expands on this first category as follows: "The Court [erroneously] imposed consecutive sentences for a single act that constituted 'two offenses' . . . [and] the Prosecutor's expert witness improperly bolstered witness testimony . . . by stating 'only 1% of these type of crimes are falsely accused.[']"  Petitioner's second ground for relief is ineffective assistance of appellate counsel.  However, he did not explain how his appellate counsel was deficient.

Attached to the petition is a motion to hold the petition in abeyance. (Docket No. 1).  Construing this filing liberally,[2] the Court finds that Petitioner submitted a "protective petition."  *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (internal quotation marks omitted).  Put simply, Petitioner requested the stay so that he could continue to exhaust his § 440.10 motion and then exhaust another claim by filing a writ of error *coram nobis*.  Petitioner stated that he currently had pending a "Motion for permission to Appeal denial of leave to application to the Court of

---

[2] *See Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983).

Appeals [sic], *and* Writ of Error Coram Nobis to the Appell[ate] Division 2 Dept [sic]." (Docket No. 1 at 12).  Elsewhere, Petitioner stated that a "[w]rit of error will be filed pending the outcome of my Motion for permission . . . to appeal the Court of Appeals of New York." (Docket No. 1 at 7).  The Court construes this and other language in the petition and attached motion— which are filed electronically as one document (Docket No. 1)—to mean that Petitioner wanted this Court to stay his habeas petition so that he could continue to exhaust his § 440.10 claims and then file a writ of error *coram nobis*.

In the attached affidavit in support of his motion to hold the petition in abeyance, Petitioner argued that he was currently appealing the Appellate Division's denial of his § 440.10 appeal to the New York Court of Appeals. (Docket No. 1).  Petitioner further argued that, while he was waiting for a decision from the New York Court of Appeals, he did not believe that he could litigate another claim he wished to pursue in state court, namely, a writ of error *coram nobis* before the Appellate Division.  Petitioner never specified in his petition or its attachments the bases for his ineffective assistance of appellate counsel claim.

On September 19, 2014, however, Petitioner filed a purported "renewal" of his motion to hold his petition in abeyance. (Docket No. 9).  In that application, Petitioner advised the Court that the New York Court of Appeals denied his appeal related to his § 440.10 motion.  He then requested, again, that this Court hold his petition in abeyance, allowing him to return to state court to file a writ of error *coram nobis*.  Petitioner also stated, for the first time, the grounds for his ineffective assistance of appellate counsel claim, which are:

> The identification conducted by Detective Meehan was unduly suggestive, where the evidence that the witnesses communicated during the photo array preview was not alleviated;
>
> The People committed a disclosure violation by untimely disclosing phone records, and the trial court's failure to remedy the matter resulted in a denial of fundamental fairness;

> The People committed a *Brady* violation when they failed to preserve a portion of a video tape offered at trial, disclosing the edited version that omitted the exculpatory view of the tape Defendant could have used in defense of the charges – the portion which did not show his presence that the people were aware of.

(Docket No. 9 at 4-5).  Finally, construing Petitioner's application liberally, the Court agrees with Respondent's interpretation that Petitioner further requested permission to amend his petition to include the claim from his unsuccessful § 440.10 motion, i.e., that the prosecution failed to fully disclose a cooperation agreement regarding Jabar Williams.

Respondent urges this Court to deny Petitioner's applications. (Docket Nos. 12 and 13).

## II.  STANDARD TO AMEND

Rule 15 of the Federal Rules of Civil Procedure, made applicable to habeas proceedings by 28 U.S.C. § 2242, Rule 81(a)(2) of the Federal Rules of Civil Procedure, and Habeas Corpus Rule 11, "allows pleading amendments with 'leave of the court' any time during a proceeding." *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Fed. R. Civ. P. 15(a)).  However, this rule is limited by the statute of limitations of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which requires habeas petitions to be filed within one year of a petitioner's conviction becoming final. 28 U.S.C. § 2244(d); *Mayle*, 545 U.S. at 654 (citation omitted). Thus, if an amendment is made after the statute of limitations expired, any new claim is untimely unless it relates back to the claims of the original, timely petition, *i.e.*, the claims arise out of the same conduct, transaction or occurrence. *Mayle*, 545 U.S. at 655 (quoting Fed. R. Civ. P. 15(c)(2)).  "[A]n amendment does not relate back if it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Pierre v. Ercole*, 607 F. Supp. 2d 605, 608 (S.D.N.Y. 2009) (quotation marks and citation omitted).

The Court properly denies leave to amend when the proposed new claims would be futile, either because they fail to comply with the aforementioned procedural requirements or they lack merit. *See Pierre*, 607 F. Supp. 2d at 607 (denying leave to amend where ineffective assistance of counsel claims lacked merit and noting the timeliness requirement). In fact, Habeas Corpus Rule 4 requires the Court to "summarily dismiss the petition" if "'it plainly appears . . . that the petitioner is not entitled to relief in the district court.'" *Mayle*, 545 U.S. at 656 (alteration provided) (quoting Habeas Corpus Rule 4).

## III. STANDARD FOR STAY

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court clarified the district courts' ability to issue a stay and abeyance of habeas corpus petitions in limited circumstances. The purpose of the stay and abeyance is "to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to the federal court for review of his perfected petition." *Rhines*, 544 U.S. at 271-72. Thus, as an initial matter, a petitioner must have a mixed petition—one that contains both exhausted and unexhausted claims. *See Rhines*, 544 U.S. at 277-78 (discussing staying of a mixed petition to permit litigation of unexhausted state claims); *Ortiz v. Heath*, No. 10 Civ. 1492, 2011 WL 1331509, at *14 (E.D.N.Y. Apr. 6, 2011) ("stay and abeyance procedure applies only to petitions which contain unexhausted claims").[3] However, courts will also consider stay and abeyance applications with a simultaneous motion to amend. *See, e.g., Ortiz*, No. 10 Civ. 1492, 2011 WL 1331509, at *1 ("court construes petitioner's 'stay petition' . . . as a motion to amend the petition as well as an application to invoke the stay-

---

[3] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and other cases, *infra*, only available by electronic database, accompany this Decision and Order and shall be simultaneously delivered to *pro se* Petitioner.

and-abeyance procedure"); *Cordova-Diaz v. Brown*, No. 10 Civ. 5133, 2011 WL 723575, at *5-6 (S.D.N.Y. Feb. 8, 2011) (construing *pro se* application as seeking to amend petition and requesting a stay).  Thus, if a petitioner meets this threshold inquiry, a stay and abeyance may only be granted if:  "(1) good cause exists for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not 'plainly meritless'[;] and (3) the petitioner has not engaged in intentionally dilatory tactics." *Ortiz*, No. 10 Civ. 1492, 2011 WL 1331509, at *14 (alteration provided) (citing *Rhines*, 544 U.S. at 277-78); *see also Cordova-Diaz*, 2011 WL 723575, at *5 (quoting *Rhines*, 544 U.S. at 271-72, 277).

## IV.  DISCUSSION

Petitioner essentially brings two requests before the Court.  His first request is that the Court allow him to amend his petition to add the *Brady* claim he unsuccessfully litigated in his § 440.10 motion to vacate his judgment.  His second request is that the Court stay his petition so he can exhaust his three ineffective assistance of appellate counsel claims.  The Court will address each request in turn.

## A.  § 440.10 Claim

In his September 19, 2014 application to this Court, Petitioner explicitly requested that he be allowed to litigate his *Brady* claim—regarding an allegedly undisclosed cooperator agreement—in federal court.  Respondent argues that this application should be denied because it is an untimely motion to amend.  Reading the petition liberally, however, it is clear that Petitioner always wanted to litigate this issue in federal court.

Throughout the petition, Petitioner mentioned his pending § 440.10 motion in state court.  In his attached motion to hold the petition in abeyance, he wrote that, if his appeal of that motion failed in state court, "his conviction will be prime for argument in this honorable Court . . . ."

Moreover, in the next paragraph, Petitioner transitions to discuss ineffective assistance of counsel, referring to this as "an additional issue [he] seeks to exhaust in state court." (Docket No. 1 at 20). Thus, the Court is satisfied that Petitioner preserved this issue in his original petition.

Accordingly, the Court GRANTS Petitioner's request to amend his petition to include a *Brady* claim regarding an allegedly undisclosed cooperation agreement between Jabar Wilson and the federal government.

**B.  Ineffective Assistance of Appellate Counsel**

In his original filing, Petitioner indicated that one of his grounds for relief was ineffective assistance of appellate counsel. Petitioner did not specify how his appellate counsel failed him until September 19, 2014, but the Court deems the three arguments he later elaborated to relate back to his original petition. Therefore, the Court concludes that these claims may be asserted in an amended petition.

Moreover, the Court GRANTS Petitioner's application to stay this Petition in abeyance pending the resolution of his writ of error *coram nobis* in state court. First, Petitioner has demonstrated good cause for his failure to exhaust by citing the Supreme Court's dicta in *Pace*, 544 U.S. at 416, regarding a prisoner's "reasonable confusion about whether a state filing would be timely . . . ." *Cf. Gomez v. Ercole*, No. 09 Civ. 7723, 2010 WL 4118357, at *1 (S.D.N.Y. Oct. 19, 2010) ("Here, [the petitioner] has demonstrated possible good cause for his failure to exhaust his ineffective assistance of counsel claims. His confusion about whether he needed to exhaust [this claim] appears reasonable."). Second, his three proposed claims are not "plainly meritless." *Rhines*, 544 U.S. at 277. Third, "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. Therefore, the *Rhines* factors are satisfied, and this Court GRANTS Petitioner's request that his petition be held in abeyance.

## V.  CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's application for a stay.  The petition is hereby stayed for 30 days from the date of this Order so that Petitioner may file his proposed motion in state court.  If Petitioner files such a motion within that time, the petition will remained stayed until 30 days after he has completed his efforts to exhaust his ineffective assistance of counsel claim. *See Zarvela v. Artuz*, 254 F.3d 374, 381 (2d Cir. 2001) (endorsing 30-day periods to commence a state court proceeding and to return to the district court after exhaustion is completed).  Petitioner is warned, however, that if he fails to comply with the conditions of this stay, the stay may be vacated retroactively as of the date it was entered and his ineffective assistance of counsel claim may be dismissed. *Id.*  Respondent is not required to submit an answer to the Petition at this time.

Finally, the Court orders that the parties shall advise the Court when any time limit has passed such that the petition should no longer be stayed.


Dated:    August 28, 2015
             White Plains, New York

                                          **SO ORDERED:**

                                          _____
                                          JUDITH C. McCARTHY
                                          United States Magistrate Judge

Case 7:14-cv-03998-VB-JCM   Document 17   Filed 08/31/15   Page 10 of 30
Ortiz v. Heath, Not Reported in F.Supp.2d (2011)
2011 WL 1331509

2011 WL 1331509
Only the Westlaw citation is currently available.
NOT FOR PRINT OR ELECTRONIC PUBLICATION
United States District Court,
E.D. New York.

Michael ORTIZ, pro se, Petitioner,
v.
Philip D. HEATH, Superintendent of Sing
Sing Correctional Facility, Respondent.

No. 10–CV–1492 (KAM).   |   April 6, 2011.

**Attorneys and Law Firms**

Michael Ortiz, Ossining, NY, pro se.

Howard Barry Goodman, Brooklyn, NY, Kings County
District Attorneys Office, for Respondent.

## *MEMORANDUM & ORDER*

MATSUMOTO, District Judge.

**\*1** Pro se petitioner Michael Ortiz ("petitioner") is
incarcerated pursuant to a judgment of conviction for
Manslaughter in the First Degree imposed in Supreme Court,
Kings County. (*See* ECF No. 1, Petition ("Pet.").) Alleging
that his state custody violates his federal and constitutional
rights, petitioner seeks relief by means of a petition for a writ
of habeas corpus brought under 28 U.S.C. § 2254. Now before
the court is petitioner's motion to withdraw the petition, return
to state court and exhaust his unexhausted claims, and then
file a second habeas petition. The court construes petitioner's
"stay petition," as discussed below, as a motion to amend
the petition as well as an application to invoke the stay-
and-abeyance procedure. (*See* ECF No. 6, Motion for a Stay
("Pet'r Stay Mem."); 9, Opposition to Petitioner's Motion
for a Stay ("Resp. Stay Opp."); 10, Reply to Respondent's
Opposition to Petitioner's Request for a Stay ("Pet'r Reply
Mem.").) For the reasons that follow, petitioner's motions to
amend and stay the petition are denied, and the petition is
denied in its entirety.

## *BACKGROUND*

Petitioner's conviction and sentence, and hence, this petition,
stem from the January 25, 2004 death of Edward Santos
("Santos") from four stab wounds. In connection with Santos'
death, petitioner was arrested and charged with two counts of
Murder in the Second Degree (N.Y. Penal Law § 125.25[1],
125.25 [2] ) and Criminal Possession of a Weapon in the
Fourth Degree (N.Y. Penal Law § 265.01[2] ). (*See* ECF
No. 4, Affirmation of Howard B. Goodman in Opposition to
Petition for a Writ of Habeas Corpus dated 7/7/10 ("Goodman
Affirm.") at ¶ 5.)

## I. The Trial

Petitioner's case was tried to a jury in Supreme Court, Kings
County. (*See generally* ECF No. 4 Exs. 1–8, Trial Transcript
1–713.) At trial, the prosecution presented two eyewitnesses
who described an attack on Santos on the night of his death.
(*See id.*)In addition, the prosecution introduced testimony
from investigating law enforcement officers and a medical
examiner, and the defense called one witness. (*See id.*)

Eyewitness Jose Manual Britto ("Britto"), a livery cab driver,
testified that as he was driving his car in Brooklyn shortly
before 1:00 a.m. on January 25, 2004, he witnessed the victim,
later identified as Santos, being attacked by a group of ten
to twelve people. (Tr. 540, 557, 559, 566–67.) Although it
was dark, Britto testified that the scene was illuminated by
streetlights and that his headlights and that as he passed by, he
observed the victim on the ground and the faces of some of the
attackers, including the face of one man near the victim who
took something in his hand and wrapped it in what appeared
to be a shirt. (*Id.* at 540–42, 545, 567, 570–73, 572, 581–
85.)After turning his car around and passing back by the
scene, Britto testified that he screamed and honked his horn
and the group dispersed. (*See id.* at 542.)

**\*2** Eyewitness Larry Petrano ("Petrano") also testified that
he observed the same incident from his third floor apartment
window until the attackers scattered and the victim staggered
down the street and collapsed. (*Id.* at 446–48, 451–52, 454,
456–59.)Petrano also testified that he saw a taxicab stop at
the scene for a matter of seconds before continuing on. (*Id.*
at 455.)

The testimony at trial showed that nearly seven months after
Santos' death, Britto identified petitioner in a lineup as one
of the individuals that assaulted Santos, and, specifically,
the individual whom he had seen wrap an unknown object
into what appeared to be a shirt. (*See id.* at 544.)At the
trial two years later, however, Britto was unable to identify

petitioner Ortiz. (*See id.* at 545). Petrano viewed the same lineup containing petitioner but did not identify anyone. (*Id.* at 368, 408–09, 451–52, 468–71.)

In addition to the eyewitness testimony, the prosecution presented evidence from the investigating New York City Police officers who responded to the scene and discovered Stantos lying bloody and unconscious on the ground. (*See id.* at 313–16.)The officers testified that Santos was immediately taken to the hospital where he died later that night. (*Id.* at 314–16, 321.)The responding officers further testified that earlier that evening, they had responded to a radio call of an assault in progress which involved Santos and another man, Danny Lugo ("Lugo").(*Id.* at 281–84, 287–88, 294–97, 300, 311–12, 322–26, 345.)However, when the officers arrived at the scene, the altercation was over and, after citing Santos and Lugo for minor infractions, Santos was escorted outside the building. (*Id.*)

The prosecution also presented testimony from the investigating New York City Police Department detective, Kevin Buell ("Detective Buell"), who testified that in August 2004, nearly seven months after Santos' death, Buell interviewed petitioner in connection with the murder. (*Id.* 354–56, 393–94, 399, 426.)Detective Buell testified that when questioned about Santos' murder, petitioner gave several contradictory accounts. According to Detective Buell, first petitioner asserted that petitioner was in Florida on the night of Santos' death (*id.* at 359–60) and later petitioner made a written statement that petitioner was in fact at the scene that night but was observing from across the street and saw someone using a knife, and that petitioner left the area and returned to find Santos on the ground injured (*id.* at 362). Eventually, after being informed several days later that an eyewitness had identified petitioner in a lineup, petitioner made oral, written, and videotaped statements to the effect that the eyewitness had likely identified petitioner because petitioner, in fact, had been at the scene and had tried to break up the fight involving Santos and another individual named Jason Roman ("Roman").(*Id.* at 372–75, 434–38.)In his written and videotaped statements, petitioner further stated that he then left the scene when things were calm only to return later to find Santos injured and officers on the scene. (*Id.*)

**\*3**  According to Detective Buell, petitioner identified Roman as the individual Santos was arguing with in a photograph of Roman provided by Detective Buell. (*Id.* at 376.)The prosecution then introduced evidence that Roman

was incarcerated in a New York State prison at the time of Santos' death on January 25, 2004. (*Id.* at 497–98.)

Finally, medical examiner Dr. Carolyn Kappen also testified at trial on behalf of the prosecution. (*Id.* at 512–24.)Dr. Kappen stated that the autopsy revealed the cause of Santos' death to be four stab wounds to the chest, and that she believed the murder weapon was a "very long, narrow-type object" such as a screwdriver or icepick. (*Id.* at 512–14, 519–21.)

At the conclusion of the prosecution case, the defense called a single witness, Stephanie Perez ("Perez"), the girlfriend of the deceased. (*Id.* at 596–618.)Perez testified that the evening of Santos' murder, Santos had come to see Perez where she was staying at a friend's apartment. (*Id.* at 599.)Because Perez had been arguing with Santos, however, she did not want to see Santos and she asked Lugo, who was also staying at the apartment, to tell Santos that Perez was not there. (*Id.* at 598–602.)This led to verbal fighting between Santos and Lugo through the apartment door. (*Id.* at 602.)Perez testified that she then saw Lugo take an unknown number of kitchen knives from the kitchen and try to open up the apartment's fire escape window, and that Lugo told Perez that "he was going to stab that mother f* * *er," referring to Santos. (*Id.* at 602–03.)According to Perez, Lugo then left the apartment with the knives, and she heard the two fighting and wrestling in the hallway through the apartment door. (*Id.* at 614–15.)Perez further testified that Lugo returned to the apartment with the knives a short time later, after the police were called to the scene of the fight and issued Lugo and Santos tickets for minor infractions. (*Id.* at 603–05.)

## II. Conviction and Sentence
At the conclusion of the trial, the court submitted for the jury's consideration charges of Murder in the Second Degree and Manslaughter in the First Degree, and the jury convicted petitioner of Manslaughter in the First Degree (N.Y. Penal Law § 125.20[1] ).(*Id.* at 677–80, 708–10;*see also* Goodman Affirm. at ¶ 6.) Petitioner was sentenced on June 13, 2006 to fifteen years' imprisonment and five years post-release supervision and is currently incarcerated pursuant to this sentence. (Goodman Affirm. at ¶¶ 6–7, 11.)

## III. Post–Trial Appeals in State Court
Petitioner was appointed new counsel for his direct appeal to the Appellate Division, Second Department, and appealed his conviction to that court on grounds that: (1) his conviction was against the weight of the evidence as the State had failed

to prove his guilt beyond a reasonable doubt, and (2) the sentence imposed was excessive. (Pet. at ¶¶ 9, 16; Goodman Affirm. at ¶ 8.) The Second Department affirmed petitioner's conviction on April 28, 2009, and petitioner's subsequent application for leave to appeal to the New York Court of Appeals was denied on August 12, 2009. See *People v. Ortiz*, 61 A.D.3d 1003, 880 N.Y.S.2d 77 (N.Y.App. Div.2d Dep't 2009); *People v. Ortiz*, 13 N.Y.3d 748, 886 N.Y.S.2d 102, 914 N.E.2d 1020 (2009).

*4 Ninety days later, in November 2009, when petitioner's time for filing a petition for a writ of certiorari expired, petitioner's conviction became final—and the one year statute of limitations for filing a habeas petition thus began to run. See 28 U.S.C. § 2244(d)(1) (applying a one-year period of limitation to habeas petitions running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"); *see also Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.2001) (concluding that "direct review" as used in Section 2244(d)(1)(A) "includes direct review by the United States Supreme Court via writ of certiorari, and that the limitations period for state prisoners therefore begins to run only after the denial of certiorari or the expiration of time for seeking certiorari"). The one-year habeas statute of limitations in this case therefore ran from November 12, 2009 until November 11, 2010.

**IV. The Instant Petition**

On March 31, 2010, petitioner timely filed the instant petition for habeas corpus. (See *generally* Pet.) In his petition, petitioner sought relief on the same two grounds raised on direct appeal in state court: (1) that the conviction was against the weight of the evidence in violation of petitioner's Fourteenth Amendment rights, and (2) that petitioner's sentence was excessive in violation of petitioner's Eighth Amendment rights. (See *id.*) In response to this court's order to show cause (see ECF No. 2, Order dated 4/7/10), Respondent Philip D. Heath ("respondent") filed his responsive pleading to the petition on July 7, 2010 (see ECF No. 4, Response to Order to Show Cause ("Resp.Pet.Opp.")).

On July 17, 2010, still within the one-year statute of limitations period for his habeas claims, petitioner filed a letter motion seeking a stay of the petition in order to allow petitioner to return to State court and exhaust certain additional claims.[1] (See Pet'r Stay Mem.) Respondent opposed petitioner's motion for a stay, arguing that petitioner

had failed to show good cause why his claims were not previously exhausted in state court, and failed adequately to articulate his claims and show that such claims were "not meritless." (See Resp. Opp. Mem.)

Petitioner then filed a reply and attached a copy of a motion to vacate his sentence which he indicated was ready for filing in state court pursuant to New York Criminal Procedure Law Section 440.10 ("proposed 440 Motion"). (See Pet'r Reply Mem.; *see also* ECF No. 10–2, Pet'r 440 Mot.) In his proposed 440 Motion, petitioner seeks to raise before the state court additional, previously unexhausted claims of: (1) ineffective assistance of trial counsel based upon counsel's alleged failure to (i) investigate the crime, (ii) prepare and effectively cross-examine a defense witness, (iii) timely object to the trial court's failure to swear the court interpreter, and (iv) timely object to various forms of prosecutorial misconduct including the prosecutor's inflammatory and prejudicial opening and summation arguments and the prosecutor's use of false testimony; and (2) actual innocence. (See *id.*) Further, petitioner alleges cause for his failure to previously exhaust these additional claims in state court on the basis of his "being unschooled in legal intricacies" and his "complete reliance on his assigned court's counsel." (*Id.*)

**DISCUSSION**

*5 Although his original petition contains only exhausted claims, petitioner moves to stay his petition in order to return to state court and exhaust the additional, unexhausted claims. (See Pet'r Stay Mem.) Mindful that a *pro se* litigant's filings must be construed "liberally" and "interpret[ed] [so as] to raise the strongest arguments that they suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir.2006) (internal quotation omitted), this court construes petitioner's July 17, 2010 and subsequent submission as a motion to amend his petition to add the previously unexhausted claims. Because such amendment would then result in a so-called "mixed petition" of both exhausted and unexhausted claims, the court further construes the filings as a motion to stay this proceeding on that mixed petition until petitioner completes his exhaustion of his additional claims in the New York courts. These separate motions are discussed in turn.

**I. Motion to Amend**

**A. Legal Standard**

2011 WL 1331509

A motion to amend a habeas petition is governed by Federal Rule of Civil Procedure 15 ("Rule 15").*Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir.2001) (citing Fed.R.Civ.P. 15(a)); 28 U.S.C. § 2242 (habeas corpus petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). Under Rule 15, a party may amend once as of right within certain time frames, or upon consent of the opposing party or leave of the court. *See*Fed.R.Civ.P. 15(a). Courts must "freely give" leave to amend where justice requires. Fed.R.Civ.P. 15(a)(2). This is especially true in the context of a *pro se* filing, such as the one here, which the Second Circuit has emphasized "is to be read liberally" and should not be dismissed without being granted "leave to amend at least once when a liberal reading of the [filing] gives any indication that a valid claim might be stated."*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000).

Leave to amend may be appropriately denied where amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Futility of a proposed amendment is established where "the proposed claim could not withstand a motion to dismiss" for failure to state a claim upon which relief may be granted. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir.2002). Yet district courts "nonetheless retain the discretion" to deny leave to amend when necessary "to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive."*See Littlejohn*, 271 F.3d at 363 (citing *Davis*, 371 U.S. at 182).

**B. Application**

Here, the relevant timeframes having passed, and absent the consent of respondent, petitioner may only amend the petition with leave of the court. *See*Fed.R.Civ.P. 15. In considering the propriety of an amendment, the court notes first, that the record here is devoid of evidence of undue delay, bad faith, or dilatory motive on the part of petitioner. *See Littlejohn*, 271 F.3d at 363. Indeed, petitioner filed his first motion to stay the petition in July 2010, well before the one-year statute of limitations period for timely filing a habeas claim expired in November 2010. The dispositive issue on whether leave to amend should be granted is thus whether amendment would be futile. The court has considered petitioner's proposed additional claims of ineffective assistance of counsel and his free-standing claim of actual innocence in turn, and for the reasons that follow, the court finds that amendment would be futile.

**1. Procedural Default of Petitioner's On–the–Record Ineffective Assistance of Trial Counsel Claims**

 \*6  Petitioner's proposed ineffective assistance of trial counsel claim contains several claims which are now procedurally barred because petitioner failed to raise the claims on direct appeal in state court, despite a sufficient record to do so.

**i. Legal Standard**

Generally, a state prisoner seeking federal habeas review must first exhaust available state court remedies. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus ... shall not be granted unless ... the applicant has exhausted the remedies available in the courts of the State ...."). This exhaustion requirement for federal habeas review is premised upon "interests of comity and federalism [which] dictate that state courts must have the first opportunity to decide a petitioner's claims."*See Rhines v. Weber*, 544 U.S. 269, 273, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).

In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts a fair opportunity to review the federal claim and correct any alleged error. *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir.1982) (en banc). Thus, the exhaustion requirement is satisfied if a petitioner has "fairly presented" his claim in each appropriate state court and "informed the state court of both the factual and the legal premises of the claim he asserts in federal court."*Jones v. Keane*, 329 F.3d 290, 295 (2d Cir.2003) (internal citation omitted).

Further, because the exhaustion requirement "refers only to remedies still available at the time of the federal petition, it is [also deemed] satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law."*Coleman v. Netherland*, 518 U.S. 152, 161, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (internal citations and quotations omitted); *see also Perez v. Greiner*, 296 F.3d 123, 124 n. 2 (2d Cir.2002) ("A petition is unexhausted only if the petitioner can still receive the relief he seeks from the state system." Thus, where petitioner "no longer had the option of proceeding in state court,""it was clearly proper to deem his claims exhausted for purposes of federal habeas review.").

Where a procedural bar gives rise to exhaustion, however, it also "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim."*Netherland*, 518

U.S. at 162;*see also Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir.2006) (federal "habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment" and two exceptions not shown)."For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice, (i.e., the petitioner is actually innocent)."*Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir.2001) (*citing Coleman v. Thompson*, 501 U.S. 722, 748–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

### ii. Application

### a. Procedural Bars Under New York Law for On–the–Record Claims Not Raised on Direct Appeal

**\*7** Under New York law, a defendant is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals."*Aparicio*, 269 F.3d at 91 (*citing*N.Y.Crim. Proc. Law § 450.10(1); N.Y. Court R. § 500.10(a)). In addition to direct appeal, New York also permits defendants to collaterally attack their convictions through a motion to vacate judgment under New York Criminal Procedure Law Section 440 .10 ("440 Motion").*See*N.Y.Crim. Proc. Law § 440.10.

Such collateral relief is unavailable, however, where a defendant "unjustifiably failed to raise the issue on direct appeal."*See Aparicio*, 269 F.3d at 91 (*citing*N.Y.Crim. Proc. Law § 440.10(2)(c)[2]; *see also Jones*, 329 F.3d at 296 ("failure to have raised the claim on direct review now forecloses further collateral review in state court") (citing N.Y.Crim. Proc. Law § 440.10(2)(c)). Thus, "New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record" to do so. *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir.2003). Where a New York court denies a collateral attack on a conviction pursuant to Section 440.10(2)(c), the Second Circuit has expressly found that the denial constitutes an independent and adequate state law procedural bar for federal habeas review. *See Murden v. Artuz,* 497 F.3d 178, 196 (2d Cir.2007) ("Where the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance on [440.10] subsection 2(c) provides an independent and adequate procedural bar to federal habeas review.").

Under this standard, New York courts routinely deny 440 motions on ineffective assistance of counsel claims where the claim is grounded in the trial record but the defendant failed to raise the claim on direct appeal. *See, e.g., Washington v. Ercole,* No. 08–cv–4835, 2009 U.S. Dist. LEXIS 50120, at *5, 2009 WL 1663667 (E.D.N.Y. Jun. 15, 2009) (collecting cases). New York courts also recognize, however, "that some ineffective assistance claims 'are not demonstrable on the main record' and are more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record."*Sweet,* 353 F.3d at 139 (internal citation omitted).

### b. Petitioner's Procedural Bar Under New York Law and Procedural Default of Federal Habeas Review

Here, petitioner has already pursued and completed the process of direct appeal under New York law, but failed to raise any ineffective assistance of trial counsel claims on his direct appeal. *See People v. Ortiz,* 61 A.D.3d 1003, 880 N.Y.S.2d 77 (N.Y.App. Div.2d Dep't 2009); *People v. Ortiz,* 13 N.Y.3d 748, 886 N.Y.S.2d 102. 914 N.E.2d 1020 (2009). Petitioner now seeks to raise previously unexhausted habeas claims premised upon trial counsel's on-the-record alleged failures to provide effective assistance. (*See generally* Pet'r Reply Mem.) Specifically, petitioner claims on-the-record that trial counsel was ineffective for failing to: (1) effectively cross-examine a defense witness, (2) timely object to the court's failure to swear the court interpreter, and (3) timely object to various forms of prosecutorial misconduct including the prosecutor's inflammatory and prejudicial opening and summation arguments and the prosecutor's use of false testimony. (*See id.*)

**\*8** Because each of these claims is based upon trial counsel's on-the-record conduct, however, and because petitioner has shown no need for an evidentiary hearing to develop the record with respect to these claims, each claim could have been raised on direct appeal, which petitioner failed to do. *See Sweet,* 353 F.3d at 140 (finding "alleged error that is the basis for [petitioner's] ineffectiveness claim [regarding charges] was particularly well-established in the trial record" and noting no apparent reason "that appellate counsel would have needed a new evidentiary hearing to develop this claim"). Accordingly, petitioner can no longer obtain review of these ineffective assistance claims from the New York Court of Appeals. *See*N.Y.Crim. Proc. L. § 440.10(2)(c); *see also*Sweet, 353 F.3d at 139–40 (finding ineffective assistance claim procedurally barred and "procedurally defaulted for purposes of federal habeas review as well" where petitioner

"unjustifiably failed to argue" the claim "on direct appeal despite a sufficient record, and consequently waived the claim under § 440.10(2)(c)").

Accordingly, because petitioner's on-the-record ineffective assistance of counsel claim would now be denied by New York courts pursuant to Section 440.10(2)(c), and because such a denial would constitute an independent and adequate state procedural bar, petitioner's on-the-record ineffective assistance of counsel claims are deemed exhausted but procedurally defaulted from federal habeas review unless petitioner can meet one of two available exceptions. *See Sweet*, 353 F.3d at 139–40.

**c. Whether to Excuse Petitioner's Procedural Default**

"As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error."*House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). Alternatively, petitioner may overcome the procedural bar by showing that "failure to consider the claims will result in a fundamental miscarriage of justice."*Coleman*, 501 U.S. at 750 (internal quotation omitted). The fundamental miscarriage of justice exception requires a showing of actual innocence based upon "new evidence" that would make it "more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt."*House*, 547 U.S. at 537. Petitioner fails to make either showing to excuse his default.

First, the court liberally construes petitioner's motion for a stay to assert "cause" for the procedural default on the basis of ineffective assistance of appellate counsel. (*See* Pet'r Reply Mem. at ¶ 7 (noting petitioner's "complete reliance on his assigned court's counsel").) To the extent petitioner's motion can be construed to assert such 'cause,' any claim of ineffective assistance of appellate counsel is unexhausted, but not procedurally defaulted because it could still be raised in state court in an application for a writ of error *coram nobis*. *See Disimone v. Phillips*, 461 F.3d 181, 191 (challenge to appellate counsel effectiveness in New York can be accomplished through petitioning for a writ of error *coram nobis* ) (citing *Sweet*, 353 F.3d at 141 n. 7*and People v. Bachert*, 69 N.Y.2d 593, 598–99, 516 N.Y.S.2d 623, 509 N.E.2d 318 (N.Y.1987)).

**\*9** However, "ineffective assistance of appellate counsel claims cannot constitute 'cause' for procedural default unless first presented in state court as an independent constitutional

claim."*Disimone*, 461 F.3d at 191 (citing *Edwards v. Carpenter*, 529 U.S. 446, 451–52, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) and *Sweet*, 353 F.3d at 141 n. 7). Moreover, the court notes that here, petitioner was counseled by a different attorney on appeal and, further, that in the habeas context, "[s]trategic choices [by appellate counsel], such as deciding which issues to raise on appeal, made after thorough investigation of the law and facts[,] ... are virtually unchallengeable."*Brunson v. Tracy*, 378 F.Supp.2d 100, 112 (E.D.N.Y.2005) (internal quotation omitted); *see also Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (noting "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Petitioner therefore fails to make a showing of cause and prejudice for his default. *Cf. House*, 547 U.S. at 536 (petitioner may overcome state court default by showing "cause for the default and prejudice from the asserted error").

Second, petitioner "makes a free standing claim of innocence" on the basis of the ineffective assistance of counsel claims he also raises and further asserts that he "was convicted of a crime he did not commit."(Pet'r Reply Mem. at 14.) These bare assertions plainly fail to introduce any required "new evidence" and are therefore insufficient to meet the "actual innocence" standard. *See House*, 547 U.S. at 537:*see also Murden*, 497 F.3d at 194 ("Actual innocence requires not legal innocence but factual innocence.") (internal quotation omitted). Petitioner therefore further fails to show "actual innocence" to excuse the default. *Cf. Aparicio*, 269 F.3d at 91 (absent a showing of "cause for the default plus prejudice," a "procedural default can only be cured by a showing of ... actual innocence").

In sum, because no state remedies remain available to petitioner, his unexhausted claims of ineffective assistance of counsel based upon counsel's on-the-record conduct are deemed exhausted and procedurally defaulted from federal review. Further, petitioner cannot overcome this procedural bar because he fails to demonstrate the required cause and prejudice or miscarriage of justice. *See Aparicio*, 269 F.3d at 91 ("procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence"). Amendment of the petition to add these claims would therefore be futile.

**2. Petitioner's Remaining Ineffective Assistance of Trial Counsel Claims**

In addition to the on-the-record ineffective assistance of counsel claims discussed above, petitioner also seeks to amend the petition to add previously unexhausted claims that are not in the record, of ineffective assistance of trial counsel based upon counsel's alleged failure to: (1) investigate the crime by interviewing the emergency medical technicians who treated the victim Santos or eyewitness Petrano, (2) prepare defense witness Perez; and (3) to object to the prosecutor's use of false testimony. Each of these claims involves counsel's off-the-record conduct, and therefore each constitutes an appropriate basis for a collateral attack under New York law. Indeed, as noted above, "New York courts have held that some ineffective assistance claims 'are not demonstrable on the main record' and are more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record." *Sweet*, 353 F.3d at 139 (internal quotation omitted); *see also People v. Brown*, 45 N.Y.2d 852, 854, 410 N.Y.S.2d 287, 382 N.E.2d 1149 (N.Y.1978) (in some cases it would be "essential[ ] that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under CPL 440.10").

*10 Further, because collateral review of a criminal judgment pursuant to New York Criminal Procedure Law Section 440.10 ("Section 440.10") is available "[a]t any time after the entry of judgment," though unexhausted, petitioner's ineffective assistance claims premised upon off-the-record conduct are not procedurally barred. *See Caballero v. Keane*, 42 F.3d 738, 740–41 (2d Cir.1994) (petitioner's failure "to avail himself of an important New York procedure for airing his ineffective assistance of counsel claim—a post-trial motion to vacate judgment"—left available "an unexhausted state procedure for considering" petitioner's ineffective assistance of counsel claim") (citing N.Y. C.P.L. § 440 .10). Yet, now allowing petitioner to amend the petition to add these claims and then return to state court in order to exhaust these claims would be futile because each of petitioner's remaining, off-the-record ineffective assistance of counsel claims appear to be plainly meritless.

### i. Legal Standard

In order to establish a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must meet the familiar two-prong test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).*See Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Specifically, a defendant must show that both (1)

counsel's performance "fell below an objective standard of reasonableness" (the "performance prong"); and (2) that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the "prejudice prong").*Strickland*, 466 U.S. at 686–95.

Under the performance prong of this standard, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."*Id.* at 689;*see also United States v. Helgesen*, 669 F.2d 69, 72 (2d Cir .), *cert. denied*,456 U.S. 929, 102 S.Ct. 1978, 72 L.Ed.2d 445 (1982) ("Trial advocacy is an art, and the advocate must be given some latitude in deciding upon an appropriate trial strategy."). Further, under the prejudice prong, "[t]he benchmark ... must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result,"*Strickland*, 466 U.S. at 686, such that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt"*Henry v. Poole*, 409 F.3d 48, 63–64 (2d Cir.2005) (quoting *Strickland*, 466 U.S. at 695). Thus, even objectively unreasonable errors on the part of counsel will not result in the setting aside of a judgment in a criminal proceeding if the errors can be shown to have had no effect on the judgment. *Strickland*, 466 U.S. at 691.

### ii. Application

Because petitioner cannot meet the two *Strickland* prongs on any of his additional proposed ineffective assistance claims, the claims appear meritless.

*11 First, petitioner seeks to raise an ineffective assistance claim in connection with trial counsel's alleged failure to investigate the crime by interviewing Petrano, the individual who observed the scene from his third floor window and later waited with the victim for medical personnel, or the emergency medical technicians ("EMTs") who treated the victim Santos. (Pet'r 440 Mot. at 13–14.) Specifically, petitioner contends that "there was a smokescreen ... with respect to Mr. Pastrano [sic] and very possibly the E.M.S. workers" and faults trial counsel for failing to investigate and elicit testimony regarding "what happened when Mr. Pastrano [sic] was helping with the victim and what did the victim told him with regard to who was responsible for [Santos'] beating and ultimately, death." (*Id.*)

2011 WL 1331509

While failure to conduct adequate pre-trial investigation may serve as the basis for a claim of ineffective assistance of counsel under *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Further, to successfully assert an ineffective assistance of counsel claim on the basis of a failure to investigate, "a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." *Taylor v. Poole*, 07 Civ. 6318(RJH)(GWG), 2009 U.S. Dist. LEXIS 76316, at *39–41, 2009 WL 2634724 (S.D.N.Y. Aug. 27, 2009) (collecting cases). Indeed, "[c]ourts have viewed claims of ineffective assistance of counsel skeptically when the only evidence of the import of a missing witness' testimony is from the petitioner." *McCarthy v. United States*, No. 02 Civ. 9082(LAK), 2004 U.S. Dist. LEXIS 705, at *53, 2004 WL 136371 (S.D.N.Y. Jan. 23, 2004) (citations omitted). Thus, "where a petitioner claims that counsel should have investigated potential witnesses, the petitioner must demonstrate that the witnesses would have testified at trial and explain the expected nature of the witnesses' testimony." *See Taylor*, 2009 U.S. Dist. LEXIS 76316, at *42–43, 2009 WL 2634724 (collecting cases).

Here, asserting simply that there was a "smokescreen," petitioner has provided no indication of the evidence that he believes would have been uncovered by further investigation from Petrano and the medical professionals. Moreover, Petrano did testify at trial and was subject to cross-examination. (*See, e.g.* Tr. at 452–73.) During that cross-examination, Petrano testified that Santos did not speak to him (or to another woman named Cathy, whom Petrano identified as Santos' girlfriend,) while they waited for the ambulance to arrive. (*Id.* at 463–65.)Petrano's testimony negates petitioner's speculation that further investigation by trial counsel would have revealed that Santos shared exculpatory information about his attackers with Petrano while they awaited the ambulance.

*12 Further, petitioner provides no indication as to whether the medical professionals who treated Santos would have appeared at trial and, if so, what potentially exculpatory evidence they could have provided. This showing is insufficient to make out a claim of ineffective assistance based on failure to investigate. *See Carneglia v. United States*, No. 03–CV–6388 (ADS), 2006 U.S. Dist. LEXIS 2933, at *11, 2006 WL 148908 (E.D.N.Y. Jan. 18, 2006) (denying

petitioner's ineffective assistance of counsel claim based upon failure to investigate where "petitioner has not provided affidavits from the potential witnesses nor any assurance they would have appeared at trial had counsel interviewed them"). Absent any information about what the medical workers could have provided, there is no reason to believe that counsel did not consider and reject the possibility of interviewing the workers. *See, e.g., Curry v. Burge*, No. 03 Civ. 0901(LAK), 2004 U.S. Dist. LEXIS 23095, at *116, 2004 WL 2601681 (S.D.N.Y. Nov. 17, 2004) (Conclusory claims "give no indication as to what exculpatory evidence a proper investigation would have revealed, or how such evidence would have benefitted [petitioner's] case. There is also no way to know that trial counsel did not consider investigating these claims but simply rejected them as being unpromising."). Petitioner's ineffective assistance of counsel claim based upon counsel's failure to investigate is therefore unsupported.

Second, petitioner faults trial counsel for counsel's alleged failure to prepare and effectively examine defense witness Perez. (*See* Pet'r 440 Mot. at 6–8.) Specifically, petitioner claims that trial counsel met with Perez for only ten minutes prior to her testimony, and failed to elicit testimony from Perez regarding: (i) Lugo telling Perez that Lugo was going to stab Santos; (ii) that Lugo punched Santos in the face during the altercation between the two; (iii) that people in the hallway where the fight between Lugo and Santos occurred "had to stop Lugo from cutting" Santos; (iv) that after the incident Lugo demanded Santos's phone number and said that he was going to call Santos to "see if this sh* * is going to jump off"; and (v) that Lugo gave Perez a quarter the next day to call Santos's house to see what happened but told Perez not to call right away for fear that she might "make it obvious." (*Id.*)

As discussed above, petitioner's claim regarding the effectiveness of counsel's examination of Perez is an on-the-record claim which is now procedurally barred in state court and procedurally defaulted from federal habeas review. Moreover, several of the points petitioner faults counsel for failing to elicit from Perez were, in fact, elicited both on direct examination by defense counsel and cross-examination by the prosecutor. For example, Perez testified that (i) Lugo told Perez that Lugo was going to stab Santos (Tr. 602–03), and (ii) Lugo punched Santos in the face during the altercation between the two (*Id.* at 614–15). Moreover, because Perez testified that she was in the apartment with the door closed while Lugo and Santos fought (*id.*), there is no evidence that Perez had personal knowledge of whether people in the

hallway stopped Lugo from stabbing Santos and, as such, that issue was not a proper subject for examination. Moreover, even assuming—contrary to controlling presumptions—that counsel's failure to elicit testimony from Perez regarding Lugo's involvement in two phone calls to Santos was not based on counsel's strategic choice, there is no basis in the trial record from which to conclude that testimony on these points, had it been elicited, would have altered the jury's determination.

 **\*13**  On this record, and in light of the strong presumption of reasonableness which attaches to counsel's strategic decisions, it appears that petitioner could not meet either the performance or prejudice prongs under *Strickland* and, as such, his ineffective assistance of counsel claim on the basis of trial counsel's failure to effectively prepare and examine defense witness Perez is meritless. *See Strickland,* 466 U.S. at 689 (noting "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Finally, petitioner faults trial counsel for counsel's alleged failure to object to the prosecutor's use of false testimony by Detective Buell. (*See* Pet'r 440 Mot. at 9–11.) "It is common ground that to challenge a conviction because of a prosecutor's knowing use of false testimony, a defendant must establish that (1) there was false testimony; (2) the Government knew or should have known that the testimony was false; and (3) there was 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *United States v. Helmsley,* 985 F.2d 1202, 1205–06 (2d Cir.1993) (*quoting United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)); *see also Shih Wei Su v. Filion,* 335 F.3d 119, 127 (2d Cir.2003) (finding in habeas context that court must apply test "defined by the Supreme Court in *Agurs*" ).

Here, petitioner has failed to make a showing under any one of these factors. Thus, petitioner offers no new evidence or affidavits to suggest that Detective Buell's testimony was false or that the prosecution knew the detective's testimony was false. Further, petitioner fails to provide "any reasonable likelihood" to conclude that such testimony by Detective Buell, even if false, "could have affected the judgment of the jury." *See Helmsley,* 985 F.2d at 1205– 06 (internal quotation omitted). Accordingly, petitioner's proposed ineffective assistance claim based upon trial counsel's failure to object to the prosecutor's knowing use of false testimony is meritless, as the failure to preserve a meritless claim cannot constitute ineffective assistance.

Accordingly, because each of petitioner's additional, off-the-record ineffective assistance of counsel claims lack merit, it would be futile to allow petitioner to amend the petition to add these claims so that he might stay the petition and return to state court to exhaust the additional claims.

### 3. Actual Innocence Claim

Finally, petitioner apparently seeks to amend the petition to add and then exhaust an actual innocence claim. A showing of actual innocence, however, serves merely as a gateway to the airing of a petitioner's defaulted constitutional claims and is not itself cognizable in habeas as a free-standing claim. *See Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). This arises from the fact that a habeas court is, in short, concerned " 'not [with] the petitioners' innocence or guilt but solely [with] the question whether their constitutional rights have been preserved.' "*Id.* (quoting *Moore v. Dempsey,* 261 U.S. 86, 87–88, 43 S.Ct. 265, 67 L.Ed. 543 (1923)).

 **\*14**  Because, as discussed above, absent any newly discovered evidence, petitioner's bare assertions of actual innocence fail to meet the actual innocence standard as set forth by the Supreme Court. Moreover, petitioner's claim of actual innocence appears to be unsupported by the record, and because the actual innocence claim itself cannot be a free-standing basis for federal habeas review, the actual innocence claim is plainly meritless and amendment of the petition to add such a claim would be futile.

Accordingly, because each of petitioner's proposed amendments would be futile, the motion to amend the petition is denied in its entirety.

### H. Motion to Stay

The court need not address the motion to stay the petition because, without amendment, the petition now contains only exhausted claims, and the stay-and-abeyance procedure applies only to petitions which contain unexhausted claims. As explained below, even assuming that amendment of the petition was not futile and the court granted petitioner's request to amend the petition to include unexhausted claims,

petitioner has failed to demonstrate a sufficient basis for invoking a stay.

## A. Legal Standard

In light of the total exhaustion requirement for federal habeas review discussed above, a district court faced with a habeas petition containing unexhausted claims generally has three options. First, the court may dismiss the unexhausted claims without prejudice. *See Rhines,* 544 U.S. at 273, 274. Second, if the unexhausted claim is plainly meritless, the court may deny the claim on the merits notwithstanding the petitioner's failure to exhaust. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Rhines,* 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless"). Third, where an unexhausted claim is contained in a petition along with exhausted claims, a district court may either invite the petitioner to delete the unexhausted claims and proceed with only the exhausted claims, or, in order to avoid foreclosing federal review of the unexhausted claims, under "limited circumstances" the court may "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Rhines,* 544 U.S. at 275, 277–78.

In order to invoke the so-called "stay-and-abeyance" procedure for a mixed habeas petition, a district court must first ensure that certain criteria are met. *See id.* at 277–78 ("stay and abeyance should be available only in limited circumstances"). Specifically, the court must ensure that: (1) good cause exists for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not "plainly meritless," and (3) the petitioner has not engaged in intentionally dilatory litigation tactics. *See id.*

## B. Application

*15 Here, there is no evidence that petitioner has engaged in intentionally dilatory litigation tactics, however, petitioner cannot meet the remaining criteria required to qualify for a stay because he does not show "good cause" for his previous failure to exhaust his claims or that his claims are not "plainly meritless." *See id.*

First, petitioner does not show "good cause" for his failure to exhaust these claims in state court. Petitioner asserts "good

cause" based on the fact that he is "unschooled in legal intricacies" and his concomitant "complete reliance on his assigned court's counsel."(Pet'r Stay Mem. at 2 ¶ 7.) The Supreme Court has not defined "good cause," and while some courts have found "good cause" to exist where a petitioner received ineffective assistance of appellate counsel, those cases have generally involved situations where the same counsel represented petitioner during trial and on appeal because "it is reasonable to conclude that an appellate attorney will not claim his own ineffective assistance of counsel." *See, e.g., Martinez v. Artus,* No. 06–CV–5401 (ERK), 2010 U.S. Dist. LEXIS 40553, at *12, 2010 WL 1692454 (E.D.N.Y. Apr. 26, 2010).

Here, petitioner was represented by new counsel on appeal, and therefore there is reason to believe that counsel would have raised a potentially meritorious ineffective assistance claim on appeal if one had existed. As discussed above, however, the proposed ineffective assistance claims petitioner now seeks to raise are meritless. Given that an appellate attorney need not bring every potential non-frivolous claim in order to meet the *Strickland* performance prong, failure to raise a plainly meritless claim, as here, cannot be ineffective assistance of counsel. *See Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (appellate counsel may appropriately "select among" potential non-frivolous claims "to maximize the likelihood of success of appeal" (citing *Jones v. Barnes,* 463 U.S. 745, 750–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)); *see also Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting *Barnes,* 463 U.S. at 751–752). Accordingly, there does not appear to be a basis for concluding that petitioner's appellate counsel was ineffective for failing to raise the claims addressed above, which the court finds to be meritless, and petitioner therefore fails to show the required "good cause" for his failure to exhaust the claims in state court. *See Rhines,* 544 U.S. at 277–78.

Moreover, even presuming good cause was established, a court may not grant a stay when the petitioner's claims are "plainly meritless." *See id.* As discussed at length above, petitioner has failed to show that the unexhausted claims are not "plainly meritless," indeed, it appears that further review of these claims in state court is either procedurally barred or would be futile. *See id.* It would therefore be an abuse of

discretion to stay the petition to allow petitioner to exhaust his additional claims. *See id.* at 277.

 **\*16** Accordingly, even if the court granted petitioner's request to amend the petition to add the proposed unexhausted claims, petitioner's request to stay the resulting mixed petition would be denied. *See* 28 U.S.C. § 2254(b)(2); *see also Rhines,* 544 U .S. at 277.

### III. The Instant Petition

Having denied petitioner's requests to amend and stay the petition, remaining before the court is petitioner's original habeas petition which indisputably contains only exhausted claims which were previously adjudicated on the merits in the state courts.

Under the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," [3] or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or" if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The Supreme Court has emphasized that the reasonableness inquiry is an objective rather than subjective one. *Id.* at 409–10. Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" in order to warrant federal habeas relief. *Id.* at 411.

### A. Claim Based on Legal Insufficiency of the Evidence

Petitioner seeks habeas relief on the grounds that the evidence at trial was legally insufficient to support his conviction for first degree manslaughter on the grounds that the prosecution did not prove beyond a reasonable doubt that petitioner participated in the attack on Santos. (Pet. at 6.) There is no dispute that petitioner exhausted this claim and that the state courts denied the claim on the merits. Because petitioner cannot show that the state courts unreasonably applied the governing legal standards in adjudicating this claim, however, the claim must be denied.

Petitioner further seeks to argue that his conviction was against the weight of the evidence (*id.*), but because this claim is not a proper basis for federal habeas review, it is denied.

### 1. Legal Standard

 **\*17** Under the deferential AEDPA standard of review discussed above, where a state court has adjudicated a claim of legal insufficiency on the merits, the sole inquiry on federal habeas review is whether the state court unreasonably applied the governing standard for legal insufficiency claims set forth in *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Policano v. Herbert,* 507 F.3d 111, 115–116 (2d Cir.2007) ("[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.") (*citing Jackson,* 443 U.S. at 324). Under that standard, a reviewing court must consider the evidence in the light "most favorable to the prosecution" *Einaugler v. Supreme Court of the State of New York,* 109 F.3d 836, 840 (2d Cir.1997), and the conviction must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original). "[A] petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 811 (2d Cir.2000). Further, in considering the sufficiency of the evidence for a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999) (citations omitted).

## 2. Application

Under New York law, a person commits Manslaughter in the First Degree when, "with intent to cause serious physical injury to another person, he causes the death of such person or of a third person[.]"N.Y. Penal Law § 125.20(1). Further, New York law provides that a person can be held criminally liable for an offense when, "acting with the mental culpability required for the commission" of the offense, that person *inter alia,* "intentionally aids" another in commission of an offense. N.Y. Penal Law § 20.00.

Here, construing the evidence in the light most favorable to the prosecution, and drawing all reasonable inferences therefrom, a rational jury could have concluded that petitioner was guilty of assaulting Santos with the intent to cause Santos "serious physical injury," and thereby caused Santos' death in violation of New York Penal Law Section 125.20(1). Specifically, a rational jury could have credited eyewitness Britto's identification of petitioner as an individual who was punching Santos in the head and who was a member of the group assaulting Santos and the individual whom Britto observed wrapping an object in what appeared to be a shirt. This testimony, coupled with the testimony of the medical examiner that Santos died of multiple stab wounds likely inflicted by a long sharp object, could lead a reasonable juror to conclude beyond a reasonable doubt that petitioner was one of the individuals who, acting in concert with others, attacked Santos, thus causing Santos' death and making petitioner guilty of first-degree manslaughter under New York law. See *People v. Modesto,* 262 A.D.2d 586, 586, 693 N.Y.S.2d 61 (N.Y.App. Div.2d Dep't 1999) (finding evidence legally sufficient to support a first-degree manslaughter conviction where defendant was one of group of gang members who "perpetrated a vicious fatal assault" on the victim, despite fact that defendant was not "among the assailants using knives or ice picks"). Further, a rational juror could have drawn an inference of guilt from petitioner's inconsistent stories upon questioning by Detective Buell, as well as his incorrect implication of Roman as an individual involved in the crime. Because the record evidence reveals that a rational juror could have concluded petitioner's guilt beyond a reasonable doubt under the *Jackson* standard, there is no basis to conclude that the New York courts unreasonably applied the *Jackson* standard. See *Williams,* 529 U.S. at 411.

*18 Moreover, to the extent petitioner raises a claim that the verdict was against the weight of the evidence, the claim asserts only an error of state law which is not a basis for federal habeas review. See *McKinnon v. Sup't, Great Meadow*

*Corr. Facility,* 355 Fed. Appx. 469, 475 (2d Cir.2009) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus, and as a matter of federal constitutional law a jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt") (*citing Jackson,* 443 U.S. at 324 *and Policano,* 507 F.3d at 116) (additional internal citations omitted).

Accordingly, petitioner's sufficiency and weight of the evidence claims are denied.

## B. Excessive Sentence

Petitioner claims that his sentence is excessive and further appears to claim that the sentence is vindictive in retaliation for his rejection of a pre-trial plea offer. (Pet. at 7.) The excessive sentence claim is not a proper basis for federal habeas review and petitioner's vindictive sentencing claim is unexhausted, procedurally defaulted, and in any event, plainly meritless.

## 1. Legal Standard

It is well-settled that no federal constitutional issue is raised where the term of a challenged sentence falls within the range prescribed by state law. See *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (affirming dismissal of petition for habeas relief where petitioner challenged as "cruel and unusual" a sentence within the range prescribed by state law). An enhanced sentence that is "motivated by actual vindictiveness towards the defendant for having exercised his guaranteed rights" violates due process, however, and thus serves as the proper basis for federal habeas review. See *Morales v. Miller,* 41 F.Supp.2d 364, 380 (E.D.N.Y.1999) (*quoting Wasman v. United States,* 468 U.S. 559, 568, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984)).

## 2. Application

Here, petitioner does not dispute that his fifteen year sentence for first degree manslaughter fell within the range prescribed by New York Penal Law for a Class B violent felony offense. *See*N.Y. Penal Law §§ 70.02(1)(a), (2)(a), (3)(a), 125.20 (offense of first degree manslaughter requires determinate prison term of between five and twenty-five years). Because petitioner's sentence fell within the range prescribed by state law, his excessive sentence claim does not raise a federal constitutional issue and, therefore, is not a proper basis for

habeas relief. Accordingly, petitioner's Eighth Amendment claim is denied. *See Keane.* 969 F.2d at 1383.

Moreover, to the extent petitioner for the first time attempts to raise a claim of vindictiveness in connection with his sentence, this claim is unexhausted because he failed to raise it on direct appeal, and, for the reasons discussed at length above, this claim is now procedurally barred from review in state court pursuant to New York Criminal Procedure Law Section 440.10. *See* N.Y.Crim. Proc. L. § 440.10(2) (c); *see also Aparicio,* 269 F.3d at 89–90. This claim is therefore deemed exhausted but procedurally barred from federal habeas review because petitioner does not show cause and prejudice for the default or that a miscarriage of justice would result from this court's failure to hear the claim. *See Aparicio,* 269 F.3d at 90.

**\*19** Moreover, upon the record before the court, petitioner has failed to show good cause for his failure to previously exhaust this claim and it appears plainly meritless. Consequently, there is no basis to stay the petition to allow petitioner to return to state court to exhaust this claim.

Accordingly, to the extent petitioner seeks federal habeas relief on the basis of an unexhausted vindictiveness at sentencing claim, the claim is deemed exhausted but procedurally barred and thus denied on the basis of petitioner's procedural default, or alternatively, denied on the merits pursuant to § 2254(b)(2), notwithstanding the failure of petitioner to exhaust state remedies. *See* 28 U.S.C. § 2254(b) (2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.");

*see also Rhines,* 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless").

### CONCLUSION

For the foregoing reasons, the motion to amend the petition, the motion to stay the petition, and the application for writ of habeas corpus are each denied in their entirety. Because petitioner has not made a substantial showing of the denial of any constitutional right, the court will not issue a certificate of appealability. 28 U.S.C. § 2253; *Lozada v. United States,* 107 F.3d 1011, 1017 (2d Cir.1997), abrogated on other grounds, *United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997) (discussing the standard for issuing a certificate of appealability). The court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this judgment denying the petition would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 444, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is respectfully requested to dismiss the petition, enter judgment in favor of respondent, and to close this case. Respondent shall serve a copy of this Memorandum and Order upon petitioner and file a declaration of service by April 8, 2011.

### SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1331509

---

Footnotes

1    Specifically, petitioner asserted that "some" of the unexhausted claims petitioner wished to pursue in state court included: (1) the prosecutor's use of false testimony; (2) actual innocence; (3) improper summation; and (4) ineffective assistance of trial counsel. (*See* Pet'r Stay Mem. at 1–2.)

2    New York Criminal Procedure Law Section 440.10(2)(c) provides, in relevant part, that a
      court must deny a motion to vacate a judgment when ... [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

3    Federal courts may also consider the decisions of inferior federal courts as "helpful amplifications of Supreme Court precedent," in "evaluating whether the state court's application of the law was reasonable." *Matteo v. Sup't,* 171 F.3d 877, 890 (3d Cir.1999) (en banc); *see also Bohan v. Kuhlmann,* 234 F.Supp.2d 231, 248 n. 10 (S.D.N.Y.2002) (a district court is not required to disregard a Circuit court's interpretation of "clearly established Federal law, as determined by the Supreme Court"); *Shiwlochan v. Portuondo,* 345 F.Supp.2d 242, 263 (E.D.N.Y.2004) (same).

Ortiz v. Heath, Not Reported in F.Supp.2d (2011)

2011 WL 1331509

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Cordova-Diaz v. Brown, Not Reported in F.Supp.2d (2011)

2011 WL 723575

2011 WL 723575
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jason CORDOVA–DIAZ, Petitioner,
v.
William D. BROWN, Respondent.

No. 10 Civ. 5133(CM)(KNF).    |    Feb. 8, 2011.

**MEMORANDUM AND ORDER**

KEVIN NATHANIEL FOX, United States Magistrate Judge.

**BACKGROUND**

*\*1* On May 28, 2010 [1] Jason Cordova–Diaz ("Cordova–Diaz"), acting *pro se,* made an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction for attempted second-degree murder. Cordova–Diaz asserts the following claims in his petition: (1) "newly discovered evidence shows that Petitioner is innocent of the crimes and that the juror and judge lied"; (2) he "was denied due process when the prosecutor improperly crossexamined the al[i]bi witness and the juror's perfidy"; (3) "improper evidence of petitioner's past relationship with the victim as a drug dealer was admitted into trial"; (4) "the identification evidence was unreliable"; and (5) "[t]he court failed to dismiss a juror whose fitness to serve was compromised during trial by an arrest in the courthouse, and the court told the juror to lie to the other jurors about it and the court itself lied to the other jurors about the incident."

The respondent opposed the petition, arguing it "is mixed and should be dismissed" because it contains exhausted and unexhausted claims. The respondent noted the petitioner asserted the following claims on direct appeal: (1) evidence failed to prove his guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (2) he was deprived of the due process right to a fair trial by the prosecutor's improper cross-examination of the alibi witness; (3) the trial court erred when it admitted evidence of his prior relationship with Gilbert Ortega, involving drug dealing to show motive and intent; and (4) his due process right to an impartial jury was violated by the trial court's failure to dismiss a juror after he was arrested for drug possession

during the trial and he was deprived of effective assistance of counsel, when counsel failed to object to the court's failure to dismiss that juror. The respondent contends Cordova–Diaz's claim that "[a] witness has been discovered who knows that [he] did not commit the crime" is unexhausted because it has not been raised in the state courts. According to the respondent, the state-court records do not indicate that Cordova–Diaz's motion, pursuant to New York Penal Law ("PL") § 440.10, to vacate judgment based on this claim, has been filed, and the attorney he retained to submit that motion on his behalf confirmed that "a motion had yet to be filed." The respondent maintains that, "while it is within this Court's discretion to stay a mixed habeas petition to allow a petitioner to present his unexhausted claims to the state court, such relief is unwarranted in this case" because "this Court has nothing upon which to determine whether good cause actually exists justifying a stay, since petitioner offers no description of the supposed newly discovered evidence, nor does he proffer any explanation as to why he has yet to file a motion [to vacate the judgment of conviction]. Neither does [the petitioner] explain why the purported evidence could not have been discovered sooner."

*\*2* By a letter, dated November 8, 2010, Cordova–Diaz informed the Court that, in December 2008, he retained an attorney, Robert M. Sanchez ("Sanchez"), to submit a motion to vacate the judgment of conviction on his behalf, "which [he] thought was pending in the lower state court." Cordova–Diaz contends that he only learned his attorney did not submit the motion to vacate judgment on his behalf when he received the respondent's opposition to his petition. Cordova–Diaz requests that his petition be stayed and held in abeyance until he exhausts his unexhausted claim in the state courts. In support of his request for a stay, Cordova–Diaz submitted a "draft" of the motion to vacate the judgment of conviction, prepared by his attorney.

On November 23, 2010, the Court noted it lacked sufficient information to determine whether: (a) Cordova–Diaz established good cause for his failure to exhaust the unexhausted claim with the state court; and (b) his claim of innocence, based on newly discovered evidence is meritorious. The Court ordered Cordova–Diaz to file an affidavit by his attorney, explaining the reason why a motion to vacate the judgment of conviction, containing the petitioner's unexhausted claim, has not been made since December 2008, when counsel was engaged and to file his own affidavit, stating the facts supporting his claim of innocence, based on newly discovered evidence.

On December 10, 2010, Cordova–Diaz filed his affidavit in which he asked: (i) "to withdraw his actual innocence claim since it is not based on newly discovered evidence"; and (ii) to stay and hold in abeyance his petition because "the unexhausted claims presented in Mr. Sanchez's [draft motion to vacate the judgment of conviction] are potentially meritorious."Cordova–Diaz contends that, at the time he filed his petition, he believed that an affidavit of a person identified only as "Remo," "would have exonerated him had his trial counsel called/subpoenaed Remo to testify as a witness at the trial in support of his mistaken identification defense," but "[a]fter discussion with a law clerk in Eastern Correctional Facility's law library, [he] has come to the conclusion ... that the circumstances revolving around Remo's alleged accounts is not newly discovered evidence."In the accompanying state-court motion draft, Cordova–Diaz asserts the following claims of constitutional violations: (1) he was denied effective assistance of counsel, based on counsel's "inadequate pretrial investigation and preparation," and failure "to utilize the available evidence that would have cast doubt on the [Cordova–Diaz's] guilt"; (2) "judgment was obtained in violation of [his] right to due process and a fair trial under the Fourteenth Amendment to the United States Constitution and *Brady v. Maryland,* 373 U.S. 8383 [S.Ct.] 1194 (1963), because, upon information and belief, an implied cooperation agreement between complainant Gilbert Ortega and the People was not disclosed"; (3) "material evidence adduced at the trial resulting in the judgment was false, and was, upon information and belief, prior to the entry of the judgment, known by the prosecutor to be false"; and (4) he "has established that there is a reasonable probability that he is actually innocent."

 **\*3**  On December 10, 2010, Sanchez filed a declaration, in support of Cordova–Diaz's application for stay and abeyance, explaining that he was engaged to assist the petitioner in 2008. Upon receiving the record, Sanchez familiarized himself with the part of the record involving the sworn juror who had been caught with marijuana in his possession during the trial, but Sanchez found "not many cases on point" and "much of the caselaw ... found did not favor the petitioner."However, Sanchez determined that, based on "the record file which was not used at trial, coupled with other information conveyed by the petitioner for which he himself had no direct evidentiary support, the defendant's guilt appeared less than certain."In December 2009, Cordova–Diaz's family engaged a private investigator to assist Sanchez in following some of the leads provided by the documents

in the case file and by Cordova–Diaz and to locate and interview potential witnesses. According to Sanchez, he and the investigator have conducted a thorough investigation and any delay in filing the motion to vacate the judgment of conviction "is due primarily to the fact [sic] investigating this matter thoroughly years after the occurrence is not a simple or quick task."Sanchez also confirms that the evidence to which Cordova–Diaz refers in connection with his claim of innocence based on Remo's testimony is not a newly discovered evidence, because it was available to Cordova–Diaz at the time of the trial.

On January 20, 2011, the respondent filed a supplemental affidavit,[2] contending: "While petitioner raises new claims not contained in the instant petition, namely ineffective assistance of counsel, right to an impartial jury, and an alleged *Brady* violation, he did not, however, provide an affidavit from his attorney."[3] According to the respondent, Cordova–Diaz's claims, alleged in his draft state-court motion, are untimely and do not relate back to the claims in his petition because they "would apparently be based on new legal theories and on facts that are different from those raised in his petition."

## DISCUSSION

Federal courts "construe a *pro se* litigant's pleadings and motions liberally," and "allow amendments to a *pro se* litigant's pleadings more freely."*Sims v. Blot,* 534 F.3d 117, 133 (2d Cir.2008) (citations omitted). Although Cordova–Diaz requests that his "petition be held in abeyance," the Court will consider his request as a motion for leave to amend and to stay the petition. Here, Cordova–Diaz seeks to amend his petition by removing his claim of innocence, which the respondent does not oppose.[4] He also seeks to add the following claims to his petition: (1) ineffective assistance of counsel based on inadequate pretrial preparation and failure to use the available evidence; (2) failure by the prosecution to disclose an alleged implied cooperation agreement with Gilbert Ortega; (3) falsity of the material evidence and prosecutorial misconduct in connection with it; and (4) actual innocence, which are unexhausted and opposed by the respondent.

### REQUEST TO WITHDRAW THE
### INNOCENCE CLAIM FROM THE PETITION

**\*4**  A motion to amend a habeas corpus petition is governed by Fed.R.Civ.P. 15. *See Littlejohn v. Artuz,* 271 F.3d 360, 363 (2d Cir.2001). Once the time for amending pleadings as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."Fed.R.Civ.P. 15(a) (2)."Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' " *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir.2008) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227,230(1962)).

Although Cordova–Diaz requested to withdraw his innocence claim because he realized that it was not based on newly discovered evidence as he claimed in his petition, he stated in his supplemental reply:

> The petitioner requested that the newly discovered evidence portion of the petition (page 6) be stricken from the petition. Ultimately, the petitioner's goal would be to amend the current petition to include the exhausted claims, after providing the state court an opportunity to address the claim [sic] by fairly presenting them in the same manner I would like to present to this Court, if I am permitted to amend my petition by the Court.

Since the state-court-draft motion includes the innocence claim, it appears, as he states in his reply, that Cordova–Diaz wishes to withdraw his unexhausted innocence claim from the petition so he can raise it in the state court and, subsequently, return to this court with all the claims raised in the state court, including the innocence claim. However, even when a claim is unexhausted, a federal court reviewing a habeas corpus petition may deem the claim exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001). New York law provides that a state court must deny a motion to

vacate a judgment when, although sufficient facts appear on the record to permit adequate review of the issue raised upon the motion, a defendant failed unjustifiably to raise that issue on appeal. *See* PL § 440.10(2)(c).

Here, Cordova–Diaz and Sanchez represented to the Court that the innocence claim is based on evidence which was known to Cordova–Diaz and his counsel at the time of the trial. According to the excerpts from the trial transcript, contained in the state-court draft motion, the facts in connection with the innocence claim are in the record. Cordova–Diaz does not contend that his appellate counsel provided ineffective assistance to him by failing to raise this claim on appeal. Cordova–Diaz's motion to vacate the judgment of conviction based on the innocence claim, premised on evidence available to him at the trial, would have to be denied by the state court because he failed unjustifiably to raise that issue on appeal. Since the innocence claim is procedurally barred, the Court will deem it exhausted for the purpose of the habeas corpus petition. Cordova–Diaz's request to amend his petition, by withdrawing his innocence claim from it, is denied.

### REQUEST TO ADD CLAIMS TO THE PETITION

#### *Timeliness*

**\*5**  On March 2, 2009, the New York Court of Appeals denied Cordova–Diaz leave to appeal from the denial of his direct appeal. *See People v. Cordova–Diaz,* 12 N.Y.3d 782, 879 N.Y.S.2d 59 (2009). His conviction became final on May 31, 2009. *See*28 U.S.C. § 2244(d)(1)(A); *Fernandez v. Artuz,* 402 F.3d 111, 112 (2d Cir.2005). Cordova–Diaz had until May 31, 2010, to file his federal habeas corpus petition, which he did, on May 28, 2010. *See*28 U.S.C. § 2244(d)(1). However, his request to add the unexhausted claims to his petition was made on November 8, 2010, after the one-year statute of limitations had expired. Accordingly, Cordova–Diaz's unexhausted claims are untimely. *See Duncan v. Walker,* 533 U.S. 167, 181–82, 121 S.Ct. 2120, 2129 (2001). Amending the petition to add untimely claims is futile, unless the untimely claims relate back to the claims asserted in the original petition. *See*Fed.R.Civ.P. 15(c).

#### *Relation Back*

Where, as here, a petitioner wishes "to amend his petition long after the one-year statute of limitations had run, he [is] required to show that his amended petition relates back

in accordance with Rule 15(c)."*Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 816 (2d Cir.2000).Rule 15(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "An amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set outor attempted to be set out-in the original pleading."Fed.R.Civ.P. 15(c)(B)."An amended habeas petition ... does not relate back (and thereby escape [the Antiterrorism and Effective Death Penalty Act of 1996]'s one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix,* 545 U.S. 644, 650, 125 S.Ct. 2562, 2566 (2005). Proposed new claims do not relate back to the claims in the original petition simply because they concern the same trial, conviction or sentence; rather the proposed new claims and the original claims must be "tied to a common core of operative facts" in order for relation back to be in order. *See id.* at 664, 125 S.Ct. at 2574.

The claims asserted in the original petition are supported by facts that differ entirely in both time and type from the facts needed to support the claims Cordova–Diaz wishes to add to his petition. In fact, the proposed new claims have nothing in common with the claims asserted in the petition. Therefore, Cordova–Diaz's request to add new claims to his petition is denied, because the new claims do not relate back to his original petition.

### REQUEST TO STAY AND HOLD IN ABEYANCE THE PETITION

A district court has discretion, in limited circumstances, to stay and hold in abeyance a mixed habeas corpus petition, that is, one containing exhausted and unexhausted claims, in order "to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition."*See Rhines v. Weber,* 544 U.S. 269, 271–72, 125 S.Ct. 1528, 1531 (2005). Stay and abeyance is warranted only when a district court determines that good cause exists for the petitioner's failure to exhaust his claims in the state court. *See id.* at 277, 125 S.Ct. at 1535. "[E]ven if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."*Id.*

**\*6** Although Cordova–Diaz provided a reasonable explanation for his delay in pursuing the state-court proceedings, staying the petition is not warranted in this case because the petition cannot be amended to add the untimely claims.

### CONCLUSION

For the foregoing reasons the petitioner's request to: (a) amend his petition, by withdrawing his claim of innocence from it, is denied; and (b) stay and hold the petition in abeyance is denied.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 723575

### Footnotes

1    The docket sheet for this action, maintained by the Clerk of Court, indicates that the petition was filed on July 6, 2010. "[A] *pro se* prisoner's complaint is deemed filed on the date that the prisoner 'turn[s] his complaint over to prison officials' for transmittal to the court, not when the court actually receives it."*Abbas v. Dixon,* 480 F.3d 636, 638 n. 1 (2d Cir.2007) (quoting *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993)). The petitioner signed and placed his petition in the prison mailbox system on May 28, 2010. Thus, the Court deems the petition filed on May 28, 2010.

2    On January 13, 2011, the Court directed the respondent to serve and file affidavits executed by a person admitted to practice in this court because the affidavit and the supplemental affidavit in opposition to the petition were both filed by an assistant district attorney, Cynthia A. Carlson ("Carlson"), who stated that she is "not admitted to practice before this Court and have prepared this affidavit under the supervision of Allen H. Saperstein ["Saperstein"], an Assistant District Attorney, who is admitted to practice before this Court."The Court also noted that no notice of appearance had been filed on behalf of the respondent. Thereafter, Saperstein filed a notice of appearance as well as the affidavit and supplemental affidavit in opposition to the petition.

2011 WL 723575

3     Saperstein's supplemental affidavit, filed on January 20, 2011, with the exception of the first paragraph, where counsel identifies himself, repeats verbatim Carlson's supplemental affidavit, filed on December 16, 2010. Both supplemental affidavits, filed almost one month apart, represent to the Court, in an identical introductory paragraph—albeit containing different names of the affiants, both of whom refer to themselves as "he"—that "the following statements are true, except those statements made upon information and belief, which he believes to be true."No paragraph in either supplemental affidavit is identified as being "made upon information and belief." Both supplemental affidavits also represent to the Court that the petitioner "did not, however, provide an affidavit from his attorney" and state, in a footnote, that the respondent "faxed a copy of this Court's November 23, 2010 order to petitioner's attorney, Mr. Robert M. Sanchez, Esq." Additionally, Saperstein's supplemental affidavit relies on the memorandum of law submitted previously by Carlson, in which the respondent opposed Cordova–Diaz's motion for a stay based on the petitioner's failure to comply with the Court's November 23, 2010 order, because he "did not provide an affidavit from his attorney" and "the Court still lacks sufficient information to determine whether 'there was good cause for petitioner's failure to exhaust his claims first in state court.' " This argument must be rejected as frivolous because Sanchez filed his affidavit on December 11, 2010, Docket Entry No. 13, which was five days before Carlson filed her deficient affidavit and memorandum of law and forty days before Saperstein filed his supplemental affidavit, both of which misrepresented to the Court that the petitioner failed to comply with the Court's order by securing an affidavit from Sanchez.

4     In analyzing the instant request, the Court considered whether its ruling would be a dispositive act requiring a report and recommendation to the assigned district judge. The Court determined it would not be, because a ruling on a motion to amend a pleading is non-dispositive, unless it removes a claim or defense from the action. *See In Re Motor Fuel Temperature Sales Pract. Litig.*, 261 F.R.D. 577, 579 (D.Kan.2009).

     © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Gomez v. Ercole, Not Reported in F.Supp.2d (2010)

2010 WL 4118357

2010 WL 4118357
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Alex GOMEZ, Petitioner,
v.
Robert ERCOLE, Respondent.

No. 09 Civ. 7723(RMB)(RLE).   |   Oct. 19, 2010.

**Attorneys and Law Firms**

Alex Gomez, Stormville, NY, pro se.

Maureen L. Grosdidier, Assistant District Attorney, Bronx, NY, for Respondent.

**MEMORANDUM OPINION AND ORDER**

RONALD L. ELLIS, United States Magistrate Judge.

**\*1**  Petitioner Alex Gomez ("Gomez") moves for a stay and abeyance of the instant proceedings to allow him to return to state court to exhaust the ineffective assistance of counsel claims he raises in his petition for a writ of *habeas corpus,* and to file a writ of error *coram nobis* to review appellate counsel's performance. Gomez's motion is **DENIED,**

On December 10, 2004, Gomez was convicted of attempted murder in the second degree (Penal Law §§ 110/125.25[1] ) and criminal possession of a weapon in the second degree (Penal Law § 265.03[2] ). Gomez filed a timely direct appeal, raising an ineffective assistance of counsel claim and a claim that the trial court wrongfully excluded relevant evidence. On June 24, 2008, the Appellate Division, First Department, unanimously affirmed Gomez's judgment of conviction, and also determined that his ineffective assistance of counsel claim was unreviewable because it involved matters outside the record. *People v. Gomez,* 52 A.D.3d 395, 860 N.Y.S.2d 522 (1st Dept.2008). On August 25, 2008, Gomez's leave to appeal to the Court of Appeals was denied. *People v. Gomez,* 11 N.Y.3d 736, 864 N.Y.S.2d 395, 894 N.E.2d 659. His habeas corpus petition was received by the *Pro Se* Office in this District on August 17, 2009. Gomez contends that he

did not understand that he needed to exhaust his ineffective assistance of counsel claim because his appellate attorney had raised it on direct appeal and the Appellate Division appeared to address the merits of the claim in its opinion. (Petitioner's June 21, 2010 Letter, at 2.) Gomez now seeks leave to expand the record of his ineffective assistance of counsel claim pursuant to N.Y.C.P.L. § 440.10, and to submit an application for writ of error *coram nobis* because his appellate counsel erroneously raised his ineffective assistance of counsel claim on direct appeal and also improperly abandoned his exclusion of evidence claim in the Court of Appeals, (Petitioner's June 25, 2010 Letter, at 2.)

Orders for stay and abeyance are available only in limited circumstances when a court "determines that there was good cause for the petitioner's failure to exhaust his claims first in state court."*Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). A petitioner's showing of reasonable confusion concerning his delay in exhausting his state court remedies satisfies the good cause requirement. *Whitley v. Ercole,* 509 F.Supp.2d 410, 419–20 (S.D.N.Y.20007); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 416, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("A petitioner's reasonable confusion ... will ordinarily constitute 'good cause' to explain a failure to exhaust prior to the filing of a habeas petition") (dictum). Even if a petitioner demonstrates good cause, a court "would abuse its discretion if it were to grant him a stay when his unexhausted claims were plainly merit less."*Rhines,* 544 U.S. at 277.

Here, Gomez has demonstrated possible good cause for his failure to exhaust his ineffective assistance of counsel claims. His confusion about whether he needed to exhaust his ineffective assistance of counsel claim appears reasonable. Although the Appellate Division stated that Gomez's claim was unreviewable on direct appeal, the vast majority of its opinion addressed the merits of Gomez's ineffectiveness claim. *People v. Gomez,* 52 A.D.3d 395, 860 N.Y.S.2d 522 (1st Dept.2008). Given the extent of the opinion's discussion concerning the ineffective assistance of counsel claim, Gomez's confusion about whether the claim was raised and adequately exhausted was reasonable. The Court therefore finds sufficient good cause for Gomez's failure to exhaust his state court remedies.

**\*2**  Gomez has not demonstrated, however, that his ineffective assistance of counsel claim has sufficient merit to justify a stay and abeyance. Gomez's claim is that his defense counsel was ineffective because he opened the

door during his summation argument to the introduction of previously precluded evidence of two arrests of Gomez. The Appellate Division's reviewed the existing record, and, to the extent it permitted review, determined that defense counsel's summation argument was a reasonably calculated risk that backfired, and that Gomez "received effective assistance under state and federal standards." *Gomez,* 52 A.D.3d at 395, 860 N.Y.S.2d 522. Accordingly, Gomez's request for a stay and abeyance to exhaust his ineffective assistance of counsel claim is **DENIED.**Gomez has until **November 2, 2010,** to submit a reply to Respondent's Answer.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 4118357

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.